IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LINDSEY WARD, Personal Representative
of the ESTATE OF KLINT MITCHELL,
LINCOLN MITCHELL, ALEXIS MITCHELL,
& LINDSEY WARD in her individual capacity,

                                              Plaintiffs,                    OPINION AND ORDER

   v.

                                                                  21-cv-343-wmc

AIR METHODS CORPORATION,
ALLIANZ GLOBAL RISKS US
INSURANCE COMPANY, & XYZ
unknown insurance company,

                                             Defendants.

---

On April 26, 2018, a helicopter ambulance owned and operated by defendant Air Methods Corporation crashed in Hazelhurst, Wisconsin. Among the three people killed in the crash was critical care flight nurse Klint Mitchell. Mitchell's fiancé Lindsey Ward and their minor children, Lincoln and Alexis, bring this suit against Air Methods and its alleged insurer, Allianz Global Risks US Insurance Company. Defendants removed this case based on diversity subject matter jurisdiction under 28 U.S.C. § 1332.[1] Pending before the court is defendant Air Methods' partial motion to dismiss. (Dkt. #23.)

---

[1] In addition to asserting more than $75,000 in controversy, the notice represents that plaintiffs are all domiciled in Michigan, while defendant Air Methods is a Delaware corporation with its principal place of business in Englewood, Colorado, and defendant Allianz is an Illinois insurance corporation organized under the laws of Illinois with its principal place of business in Chicago, Illinois. (*See* Notice of Removal (dkt. #1) ¶¶ 4-8.) In their complaint, plaintiffs also named generically Allianz's related companies and "XYZ Insurance Company," allegedly providing liability insurance as placeholders, but to date no such company has been identified, much less served with the complaint.

BACKGROUND[2]

A. Facts Regarding the Crash

Air Methods is a helicopter operator that provides emergency medical services. Married couple Rico and Lisa Caruso were both employed by Air Methods as helicopter pilots. On the afternoon of April 25, 2018, the Carusos returned to their home in Watersmeet, Michigan, after a weeklong vacation in Florida with their two infant daughters. The day after their return, the Carusos were scheduled for back-to-back shifts, with Lisa Caruso's shift set for 5:00 a.m. until 5:00 p.m. on April 26, 2018, and Rico Caruso's shift set for 5:00 p.m. on April 26, 2018, until 5:00 a.m. the next day.

Rico arrived for his shift early, around 4:15 p.m. He successfully piloted three flights and departed on his fourth of the night at 9:07 p.m. from the Dane County Regional Airport in Madison, Wisconsin. At the time, there were no clouds, winds were calm, and visibility was ten miles. Beginning around 10:15 p.m., Rico began exhibiting signs of fatigue. At 10:43 p.m. and 12 seconds, the artificial horizon indicator on the helicopter showed the initiation of a right bank, after which the roll rate increased rapidly, the helicopter completely inverted, and began to pitch down. At 10:43 p.m. and 28 seconds, the helicopter struck a 70 foot tall tree and crashed to the ground. Flight nurse Klint Mitchell and paramedic Gregory Rosenthal were killed in the crash along with Rico Caruso.

There were no light or audio warnings that would indicate a mechanical malfunction and no pre-impact abnormalities that would have precluded normal operation of the

---

[2] In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true and draws all inferences in plaintiffs' favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

helicopter. An autopsy of Caruso neither suggested that he suffered from any medical condition nor that it was a cause of the crash. Rather, plaintiffs allege that the crash was caused by Caruso falling asleep. Plaintiffs allege that Air Methods knew, or should have known, that Caruso would be too fatigued to transport patients and the medical team safely, and it should now be held liable for Mr. Mitchell's death.

### B. Facts Regarding Choice of Law

While the accident occurred in Wisconsin, Mitchell was a life-long Michigan resident. Moreover, Mitchell's family, including his fiancé and their two minor children likewise resided at all relevant times in Michigan. Mitchell also applied for the flight nurse job with Air Methods from his residence in Michigan and always paid taxes in Michigan.

Still, like both Carusos, Mitchell would travel to Woodruff, Wisconsin each week for his shifts. Air Methods is a Delaware corporation based in Colorado, while Allianz is an Illinois corporation based in Chicago.

## OPINION

A motion to dismiss for failure to state a claim is designed to test the complaint's legal sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The court must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). To survive a motion to dismiss, a plaintiff must allege sufficient facts to state a plausible claim for relief. *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

3

### A. Choice-of-Law

To begin, the parties dispute which state's law applies with respect to plaintiffs' claims, with defendant contending that Wisconsin law should apply and plaintiffs arguing that Michigan law controls. When two or more state's laws may govern a given claim, a federal court must apply the choice of law rules of its forum state -- here, Wisconsin -- to determine which law controls. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009).

Traditionally, Wisconsin applied the *lex loci delicti* doctrine, which "inflexibly looked to the law of the place of a wrong." *Drinkwater v. Am. Fam. Mut. Ins. Co.*, 2006 WI 56, ¶ 32, 290 Wis. 2d 642, 654, 714 N.W.2d 568, 574. However, more recent cases have taken a more flexible approach. *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 50, 251 Wis. 2d 561, 641 N.W.2d 662. For claims sounding in tort in particular, Wisconsin courts now employ a two-part test. *Id.* ¶ 51. The first part of the test directs that "the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance." *Id.* ¶ 51. If it is "not clear that the nonforum contacts are of greater significance," then the second part of the test requires the court to consider the following, five factors to overcome the presumptive application of Wisconsin law: (1) "[p]redictability of results"; (2) "[m]aintenance of interstate and international order"; (3) "[s]implification of the judicial task"; (4) "[a]dvancement of the forum's governmental interests"; and (5) "[a]pplication of the better rule of law." *Id.*

First, in this case, the Michigan contacts are not clearly of greater significance than those of Wisconsin, the forum state. Although Mitchell and his family resided in Michigan,

he consistently traveled to Wisconsin for his job; all of Air Methods' alleged negligent actions occurred in Wisconsin; the crash itself occurred in Wisconsin; and plaintiffs filed suit in Wisconsin. Accordingly, the court finds that the law of Wisconsin as the forum state presumptively applies.

Second, the five factors cut in favor of applying Wisconsin law as well. The predictability factor, which deals with the parties' expectations, urges the application of Wisconsin law. All parties affirmatively engaged in operations in Wisconsin, and both the negligence and injury occurred in Wisconsin; thus, the application of Wisconsin law would typically be expected. The factors of interstate order and judicial efficiency also favor Wisconsin law as both are preserved by the uniform application of Wisconsin law to the crash, rather than a piecemeal approach depending on the residence of each injured person. Wisconsin would also appear to have a governmental interest in enforcing its own wrongful death statute, which caps damages in such suits, presumably to limit the financial exposure of its residents and businesses operating within the state.

Plaintiffs would emphasize the final factor, contending that Michigan has the "better rule" because it does not cap wrongful death damages, unlike Wisconsin, but this interest in providing greater compensation to victims is answered by a countervailing interest in limiting financial exposure to defendants for wrongful death suits. Since neither approach is obviously "better," the court considers this final factor to be a neutral one. Overall, then, *both* the presumptive application of Wisconsin law and the five-factor test lead to the same conclusion: Wisconsin, not Michigan, law will determine the outcome of this case.

### B. Defendant's Motion to Dismiss

The court next turns to defendant's two substantive arguments in its partial motion to dismiss, each of which are addressed in turn below.[3]  <u>First</u>, defendant contends that Wisconsin's hierarchy of beneficiaries does not allow Ward to recover in her individual capacity. In particular, defendant points out that while Ward was Mitchell's long-time fiancée, shared two children, and lived together, they were never married. Nevertheless, Ward was named as the personal representative to Mitchell's estate, and as such, she is unquestionably authorized to bring a wrongful death action in her capacity as personal representative. Wis. Stat. § 895.04(1) ("An action for wrongful death may be brought by the personal representative of the deceased person or by the person to whom the amount recovered belongs."). Further, while the operative statute, Wis. Stat. § 895.04(2), specifies a "hierarchy of parties" who are entitled to *retain the proceeds* of a wrongful death damage award, *Weiss v. Regent Properties, Ltd.*, 118 Wis. 2d 225, 231, 346 N.W.2d 766 (1984), the first class of those beneficiaries entitled to recover a wrongful death award "is the 'surviving spouse' or domestic partner, with a set-aside for minor children 'in recognition of the duty and responsibility of a parent to support minor children.'" *Force ex rel. Welcenbach v. Am. Fam. Mut. Ins. Co.*, 2014 WI 82, ¶ 43, 356 Wis. 2d 582, 850 N.W.2d 866. "The second class is lineal heirs." *Id.*  Thus, while a personal representative is authorized to <u>bring</u> a wrongful death action on behalf of an estate, unless separately listed in the statute's

---

[3] Defendant also argued for the first time in its reply brief that plaintiffs cannot recover on their claim for negligent infliction of severe emotional distress. Given the belated timing of this argument, however, it is waived until summary judgment. *See Campos v. Cook Cty.*, 932 F.3d 972, 976 (7th Cir. 2019) ("Parties waive arguments which they develop for the first time in a reply brief.").

6

hierarchy of beneficiaries, he or she cannot personally recover on such an action, except to bring suit "as agent of the persons for whose benefit the action is brought." *Weiss*, 118 Wis. 2d at 231.

Here, defendant contends that Ward may not recover personally because she does not qualify as a beneficiary under the statute's hierarchy. More specifically, defendant's present motion rests on the fact that Ward is neither a "spouse" nor a "domestic partner" under Wisconsin law, relying on the requirement that members of a domestic partnership be of the same sex. Wis. Stat. § 770.05(5); (Def.'s Br. (dkt. #6) 7.) With only spouses or same-sex couples covered under the statute, defendant reasons that fiancées and heterosexual couples were not intended to be beneficiaries. (Id.) While this is certainly a plain reading of Wis. Stat. § 770.05(5), there is at least some reason to question the current applicability of this statute since it was enacted in 2009, years before the Supreme Court held that same-sex couples hold a constitutional right to marry. *Obergefell v. Hodges*, 576 U.S. 644 (2015). If nothing else, that decision calls into question the constitutionality of a statute that specifically defines domestic partnership as existing only between a same-sex couple as a category separate from marriage. Regardless, the court is not willing to definitively rest on the text of Wis. Stat. § 770.05(5) at the pleading stage given the uncertainties around its continued validity.

In support of their position, plaintiffs further contend that the Wisconsin Supreme Court's decision in *Force*, 2014 WI 82, permits a circuit court "to determine on the unique facts of this case" that Ward should be deemed a "surviving spouse," notwithstanding the fact that she and Mitchell were not married. (Pl.'s Opp'n (dkt. #13) 18.) In *Force*, Billy

7

Joe Force and Linda Force had married in the 1990s but separated only six months later. 2014 WI 82, ¶ 23. Billy Joe subsequently fathered three children with other women, although he and Linda never formally divorced. *Id.* In 2006, after Billy Joe had died in a car accident, his minor children sought to recover under Wisconsin's wrongful death statute. *Id.* ¶¶ 24-26. The defendant in that case, an insurance company, argued that Linda's chances of recovery were zero given her estrangement *and* the text of the statute ties the recovery of minor children to the "surviving spouse," meaning the children must receive nothing. *Id.* ¶ 51. The Wisconsin Supreme Court rejected this argument, concluding that:

> in order to avoid an absurd, unreasonable result contrary to the legislative purposes of the wrongful death statutes . . . we construe the statutes under the unique facts of the instant case to allow the minor children to recover even though the deceased's spouse in the instant case is alive and does not (according to the circuit court) recover any damages for the deceased husband's wrongful death.

*Id.* ¶ 8. Whatever the merit of plaintiff's argument, the record has again not been developed enough for the court to decide whether the case at hand is sufficiently similar to *Force*. In particular, further factual findings and argumentation are necessary to inform the court's ultimate decision. For both constitutional and statutory reasons, therefore, it would be premature to dismiss Lindsey Ward in her individual capacity at the pleadings stage.

Second, defendant contends that plaintiffs' claim for wrongful death premised on negligent entrustment must be dismissed. Wisconsin's wrongful death statute provides:

> Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof,

8

> then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured; provided, that such action shall be brought for a death caused in this state.

Wis. Stat. § 895.03.

In its motion to dismiss, defendant argues that plaintiff cannot maintain a claim for wrongful death premised on an underlying common law tort of negligent entrustment because the statute only permits liability for "wrongful acts" and does not specifically enumerate negligent entrustment as an additional basis for liability. However, as the court has already explained in a related opinion, defendant misunderstands the operation of § 895.03. That statute is a "derivative tort action," specifically premised on an underlying common law tort (the "wrongful act, neglect, or default") which the decedent could have maintained but for his death. *Christ v. Exxon Mobil Corp.*, 2015 WI 58, ¶ 22, 362 Wis. 2d 668, 866 N.W.2d 602; *see also* James E. Rooks, Jr., Recovery for Wrongful Death § 2:1 (July 2021) (explaining generally the operation of wrongful death statutes).

Thus, wrongful death actions may, for example, be brought based on an underlying claim of negligence, *Chang v. State Farm Mut. Auto. Ins. Co.*, 182 Wis. 2d 549, 514 N.W.2d 399 (1994), or medical malpractice, *Maurin v. Hall*, 2004 WI 100, 274 Wis. 2d 28, 682 N.W.2d 866. Moreover, at least one Wisconsin court has specifically approved of a wrongful death action based on an underlying claim of negligent entrustment. *Est. of Marmsoler v. Dawson*, 143 Wis. 2d 893, 422 N.W.2d 461 (Ct. App. 1988). Accordingly, plaintiff's claim for wrongful death based on defendant's alleged negligent entrustment states a claim and will not be dismissed at the pleading stage either.

ORDER

IT IS ORDERED that defendant's motion to dismiss is DENIED consistent with the opinion above.

Entered this 8th day of October, 2021.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge